CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

EVAN MATEER (CABN 326848)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
Evan.mateer@usdoj.gov

Attorney for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LESTER LEE,<br><br>Defendant. | CASE NO. 4:26-CR-00003 JST<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

## I. INTRODUCTION

Defendant Lester Lee is set be sentence on August 7, 2026, for violent, racist threats he made against students and teachers at a Bay Area elementary school. This was a serious offense that caused significant harm both to the immediate victims, as well as the broader school community. To reflect this grave conduct, the Court should impose a meaningful sentence of 12 months of custody, the low end of the applicable guidelines range. However, considering Lee's age and various health issues, the government respectfully recommends that the Court order him to serve these 12 months in home confinement.

## II. BACKGROUND AND OFFENSE CONDUCT

In 2023, Lester Lee was employed as a substitute teacher for San Lorenzo Unified School District. On April 21, he was working as a long-term substitute at Dayton Elementary School, covering the physical education class. During the course of the day, Lee came into conflict with two Black students, both of whom were members of Victim 1's class. First, he engaged in an argument with a Black student after he singled him out as "dumb." Later in the day, Lee was engaged in a conflict with another Black student that he believed was behaving poorly. The student reported that Lee hit her with his walking stick, which he regularly carried with him. This incident was reported to the school administration. The principal of the school, Victim 2, took a written statement from Lee in which he disputed that he hit the student. The interaction was civil, and Lee was sent home. After further investigation by the school district, including collecting statements from the students in Victim 1's class, Lee was terminated as a substitute teacher for the school district.

Angered by his dismissal, Lester Lee engaged in a campaign of threats and harassment against the school. He made a police report falsely claiming that Victim 2 had struck him. He made calls and sent letters to officials at the school district claiming that Victim 2 was failing to make the school safe, noting in particular "three little thugs" that he thought should be removed from the school. And he sent three violent, threatening letters to Dayton Elementary itself.

On May 3, 2026, Dayton Elementary School received the first threatening mailing (Mailing #1), which was addressed to Victim 1, a teacher at Dayton Elementary School. Inside was a one-page enclosure with the following typed message:

> "[Victim 1] my child is in your classroom and she tells me that some niggers in your classroom have been bothering not only her but others

> [sic] students at the school as well. And I am telling you now if those niggers do not stop bothering my child, I am coming down there and not only shooting all those niggers but you as well. So get those niggers out of there because I hate niggers and the only good nigger is a dead nigger!"

On May 18, 2023, Dayton Elementary School received a second suspicious mailing delivered by USPS (Mailing #2). Mailing #2 was addressed to Victim 2, the principal at Dayton Elementary. Mailing #2 contained no message but was filled with a white powdery substance.

On May 19, 2023, the school received another suspicious mailing (Mailing #3) delivered by USPS. Mailing #3 was also addressed to Victim 1. Inside Mailing #3 was another single-page, typewritten letter that read as follows:

> My child keeps telling me that a nigger named [Minor Victim 1] and another nigger girl in your class are still bothering her, well like I told you before you better get those niggers out of there or I will come down there and shoot all those niggers and you too also because I really hate all niggers and what [sic] them all dead.

Lee's anger towards the Black students and use of racial slurs was motivated by prejudiced attitudes he harbored again Black students, which he expressed in an April 2024 interview with the FBI. Lee stated that he thought schools in Oakland and other "low income" areas were bad because "the students pretty much run the place." When asked to define "low income," Lee clarified that the meant "people, mainly people of color," attended those schools. By contrast, in Lee's mind good schools were good because "there are very few students of color at [the] school" and "very few people of color work in there." The white students, in Lee's mind, were "well behaved" and "very nice." Lee later also said that he does not "like Black teachers." He said that "the most difficult times, that happens with Black students sometimes." He goes on to say that Black students "close their mind to academics" and are "only focused on athletics."

When asked about Victim 1's class specifically, Lee said "as soon as class started I knew exactly who [the problem children] were. Unfortunately, they were three Black students, and as the day went . . . an incident occurred that showed me just how dangerous and how special some of these kids are, Ok? They're a menace to society." Lee described the students as "ghetto like" because of their "mannerisms." And then said that the real problem was "at the top" with Victim 2, because she lets "these three Black students" get "away with murder."

Lee acknowledged that "some people [might] say that" his views about Black students are prejudiced," but claimed that "it's a safety issue sometimes." After describing another school that he considered good because there were "very few, what I call Black of Hispanic students there," Lee added that "some people say, well that's racist, but that's the way it is." The government's investigation revealed that Lee has been the subject of numerous complaints arising from interactions with Black students at other schools.

On February 12, 2025, Lee was charged by Complaint with making threats in violation of 18 U.S.C. § 876(c). On January 6, 2026, the government filed an Information charging Lee with one count of violating 18 U.S.C. § 876. Lee then waived indictment and was arraigned in the Information. On February 20, 2026, Lee pled guilty to the charge in the Information pursuant to a plea agreement in which the parties agreed to make a joint sentencing recommendation of 3 years of supervised release including 12 months of home confinement, restitution of not less than $15,000, and participation in anti-racism support classes.

## III. THE SENTENCING GUIDELINES CALCULATION

The PSR calculates the offense level as follows (PSR ¶¶ 25-35):

| | |
|---|---|
| a. Base Offense Level, USSG §§2A6.1(a)(1). | 12 |
| b. Specific Offense Characteristic: | |
| a. USSG §2A6.1(b)(4)(A) (disruption to public services) | +2 |
| a. Acceptance of Responsibility | -3 |
| b. Total Offense Level | 13 |

The PSR calculates Lee as being in Criminal History Category I. The applicable sentencing guidelines range for Total Offense Level 13 and CHC I is 12-18 months. The government agrees with the PSR's calculation of the Total Offense Level and Criminal History Category.

## IV. SENTENCING RECOMMENDATION

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The

overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B. A Sentence of 12 Months in Home Confinement is Sufficient but Not Greater than Necessary**

The government recommends a sentence of 12 months of home confinement. The most important factor in identifying the appropriate sentence in this case is the seriousness of the offense. Lee's threats were seriously aggravated, in several ways. Most critically, Lee's threats were extremely violent, threatening a shooting at a school. And though the violence was specifically directed only at the teacher and principal, in an era where mass shootings at school are woefully common, the recipients of the threat reasonably believe that he would harm students at the school as well. Lee's threats were further aggravated by their racist content and motivation. The racist slurs Lee directed towards the students in Victim 1's class were unacceptable and abhorrent, serving to demean and degrade these students based on the color of their skin. Worse, Lee's insistence in the same message that the students be removed from their school mirrors the ugly history of black students being denied equal education because of their race. Indeed, this aggravating factor is confirmed by Lee's own view that Black students do not belong in the "good" schools with White students.

And these threats had real impacts. When the school informed its community of the threats, there was a spike in absenteeism, costing many students days of education, and costing the school more than $15,000 in lost funding. One student's parents found it necessary to remove him from school for the balance of the school year, causing him to miss out on end of year activities with his friends. And

the staff members and students all surely live today with the trauma that comes with receiving such a violent threat. This was a terrible crime that hurt many people, and it deserves a meaningful punishment. A meaningful punishment is also necessary to deter others from sending such threats and throwing so many lives into fearful disarray. A sentence of 12 months in custody is appropriate given these factors.

Ordinarily, the government, following the sentencing guidelines, would recommend that this sentence be served by incarceration in a Bureau of Prison's facility. But in this case, several factors suggest that home confinement, rather than incarceration, is appropriate. Lee is a 70-year-old man and has a documented history of heart disease and significant mental health issues. Providing care for Lee would likely represent a burden on the BOP. The government also does not believe that having Lee serve his sentence in home confinement rather than in custody will endanger the community. First, because Lee has been fully compliant during a lengthy period of pretrial release, the government believes it is likely that he will comply with the restrictions of home confinement. Second, because Lee's offense seems to have been strongly linked to his interactions with Black students while working in schools, the fact that he will not be in or around schools also heavily mitigates the likelihood of re-offense. Lee also has no previous criminal history. Accordingly, balancing these mitigating factors against the seriousness of the offense, a variance from the guidelines that allows Lee to serve his sentence on home confinement is appropriate.

The government recommends that, to further protect the community, the Court impose certain special conditions of supervised release. First, as noted above, Lee's history shows that he becomes angry and even violent when he is around Black students. He should therefore be ordered to have no position or employment with any school for the duration of his supervised release. The government also recommends that Lee be ordered to participate in an anti-racism support program at the direction of the Probation Office, which hopefully will correct Lee's harmful attitudes towards Black students.

Finally, the government asks the Court to order Lee to pay $15,000 in restitution to the school district. This amount represents the funding that the school lost from the spike in absenteeism after the community learned of Lee's threats.

**V. CONCLUSION**

For the foregoing reasons, the United States respectfully recommends that the Court sentence the defendant to 12 months' of home confinement, 3 years of supervised release, $15,000 of restitution, and a $100 special assessment.

DATED: July 31, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Evan M. Mateer*
EVAN M. MATEER
Assistant United States Attorney